FILED
SCRANTON

NOV 21 2011

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PER _M. 6 P._
DEPUTY CLERK

| | | |
|---|---|---|
| ALI AMIRNAZMI, | : | |
| Petitioner | : | NO. 3:11-CV-273 |
| | : | |
| v. | : | (JUDGE NEALON) |
| | : | (MAGISTRATE JUDGE CARLSON) |
| WILIAM A. SCISM, | : | |
| Respondent | : | |

## MEMORANDUM and ORDER

On February 8, 2011, Petitioner, Ali Amirnazmi, who is currently confined at the Allenwood Federal Prison Camp in White Deer, Pennsylvania, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 and a memorandum of law. (Docs. 1-2). On February 22, 2011, Petitioner filed a motion to amend his petition and attached his proposed amendments. (Doc. 8). The motion was granted on February 24, 2011, and a show cause order was issued. (Doc. 10). A response to the amended habeas petition was filed on March 17, 2011. (Doc. 11). After receiving an extension of time, Petitioner filed a traverse on April 14, 2011. (Doc. 15).

On May 5, 2011, Magistrate Judge Martin C. Carlson filed a Report and Recommendation ("R&R") recommending that the amended habeas corpus petition be denied. (Doc. 23). On May 19, 2011, Petitioner timely filed objections to the R&R. (Doc. 25). Then, on May 20, 2011, he filed a motion for an extension of time within which to respond to the R&R until he was released from the Special Housing Unit ("SHU") and transferred to another facility. (Doc. 26). This Court granted an extension until June 6, 2011. (Doc. 27). On May 23, 2011, Petitioner again filed objections to the R&R. (Doc. 28). On June 1, 2011, he filed another motion for an extension of time until June 20, 2011. (Doc. 29). His second request for additional time was granted, but Petitioner was advised that "No further extensions will be

allowed without a showing of good cause." (Doc. 30). On June 20, 2011, Petitioner filed a third motion for an extension of time to amend his objections to the R&R. (Doc. 31). This Court denied his third request for additional time on June 23, 2011, concluding that Petitioner had already filed objections to the R&R and failed to establish good cause to justify another extension. (Doc. 32). On October 27, 2011, without leave of Court, Petitioner filed a second amended petition for writ of habeas corpus. (Doc. 35). For the reasons set forth below, the R&R will be adopted.

**Standard of Review**

When objections to a report and recommendation have been filed under 28 U.S.C. § 636(b)(1)(C), the district court must make a de novo review of those portions of the report to which specific objections are made. Sample v. Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989); Goney v. Clark, 749 F.2d 5, 6-7 (3d Cir. 1984) ("providing a complete de novo determination where only a general objection to the report is offered would undermine the efficiency the magistrate system was meant to contribute to the judicial process"); Mutombo v. Carl, 2003 U.S. Dist. LEXIS 27124 (M.D. Pa. 2003) (Kane, J.). Conversely, in the absence of objections, review may properly be limited to ascertaining whether there is clear error that not only affects the rights of the plaintiff, but also seriously affects the integrity, fairness, or public reputation of judicial proceedings. Cruz v. Chater, 990 F. Supp. 375, 377 (M.D. Pa. 1998) (Vanaskie, J.); Garcia v. I.N.S., 733 F. Supp. 1554, 1555 (M.D. Pa. 1990) (Kosik, J.) (stating "the district court need only review the record for plain error or manifest injustice"). The district court may accept, reject, or modify, in whole or in part, the findings and recommendations contained in the report. 28 U.S.C. § 636(b)(1)(C); Local Rule 72.3.

**Background**

The original habeas corpus petition alleged that the Bureau of Prisons ("BOP") is violating the Second Chance Act (the "Act"), 18 U.S.C. § 3624(c)(6)(C)),[1] by not ensuring that Petitioner be placed in a residential re-entry center ("RRC") with a sufficient amount of time to promote the greatest likelihood of successful reintegration into the community. (Doc. 1). Petitioner claimed that he requested placement in a RRC for the maximum amount of time, twelve (12) months, pursuant to the Act, but was only recommended for a three (3) to four (4) month RRC placement. (Doc. 2, pp. 2-3). He asserted that the maximum allowable time in a RRC is necessary to ensure that he has an opportunity to save money to secure a residence, furnishings, and insurance. (Id. at p. 9). Petitioner also noted that his sentencing order directs him to begin restitution payments of $250.00 per month thirty (30) days after his release. (Id. at p. 10). He contended that it will take longer for him, a sixty-seven (67) year old man with a PhD and deteriorating health, to find jobs in his profession. (Id. at pp. 9-10). Further, Petitioner alleged that exhaustion of administrative remedies would be futile and would cause prejudicial delay. (Id. at p. 8) (Petitioner claimed that he is scheduled for good conduct time release on January 27, 2012.). The petition asks that Respondent, Warden William A. Scism, be ordered to place him in a RRC for the last twelve (12) months of his sentence. (Doc. 1, p. 1).

The amended habeas corpus petition further alleged that the BOP's use of erroneously filed disciplinary reports to deny Petitioner the full amount of the RRC program violates his constitutional right to due process. (Doc. 8-1, pp. 1-2). He complained that he was prohibited

---

[1] The Act requires the BOP to make an individualized determination of an inmate's needs for pre-release placement to afford him a reasonable opportunity to adjust to reentry into the community. 18 U.S.C. § 3624(c)(1); Krueger v. Martinez, 665 F. Supp. 2d 477, 480 (M.D. Pa. 2009) (Rambo, J.).

3

from attending the Residential Drug and Alcohol Treatment Program. (Id.). He claimed that in incident numbers 2010398, 2011001, and 2023646 the conduct would normally have resulted in a warning, but that Petitioner was singled out for unreasonable punishment due to his Iranian and Muslim background. (Id. at p. 2). Specifically, Petitioner alleged that he left personal items in the quiet room while he went to check e-mail. (Id. at p. 3). When the unit officer saw Petitioner's property, instead of seizing the items or making an announcement as is normally done, the officer initiated an incident report. (Id. at pp. 3-4). As to incident number 2011001, Petitioner was purportedly wearing head phones to watch television in the TV room and missed an unannounced count. (Id. at p. 3). He claimed that usually the prison officers knock on the windows to notify the inmates in the TV room, but this was not done for him in retaliation for the media attention surrounding Petitioner's case. (Id.). Next, Petitioner alleged that at his hearing regarding incident number 2023646, two (2) witnesses testified that he did not use profanity against the officer, but Petitioner was nevertheless found guilty of one (1) count. (Id. at pp. 2-3). The amended habeas petition alleged that Petitioner's constitutional rights to equal protection were violated as a result of the incident reports that similarly situated inmates never receive. (Doc. 8-1, p. 4).

In the R&R, Magistrate Judge Carlson concludes that the habeas corpus petitions should be denied because some of Petitioner's claims are unexhausted and, also, because a review of the merits reveals no constitutional violations. (Doc. 23, p. 2). The Report identifies three (3) challenges raised by Petitioner: (1) the results of the prison disciplinary hearings which led to the forfeiture of good time credit; (2) his RRC placement determination under the Second Chance Act; and (3) the decision denying him an opportunity to participate in a Residential Drug Abuse

Program ("RDAP"). (Id. at p. 17).

Magistrate Judge Carlson describes the BOP's administrative remedy procedures. (Doc. 23, pp. 14-17) (citing 18 C.F.R. § 542.10, et seq.). "[U]nder these procedures, no administrative remedy appeal is considered to have been fully exhausted until decided by the Central Office." (Id.). Importantly, "federal prisoners are required to exhaust their administrative remedies prior to seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241." (Id. at p. 18) (citing Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998); Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761-62 (3d Cir. 1996); Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981)). The R&R states that only four (4) of Petitioner's sixteen (16) grievances raised issues concerning his RRC placement. (Id. at pp. 16-21). However, the administrative appeals were still pending when the instant action was initiated; therefore, Petitioner's RRC placement claims were unexhausted. (Id.). The Magistrate Judge explains that exhaustion is not rendered futile simply because an inmate grieving under the Second Chance Act anticipates that he will be unsuccessful in his administrative appeals before the twelve (12) month release mark. (Id. at p. 19) (quoting Ross v. Martinez, 2009 U.S. Dist. LEXIS 111171 (M.D. Pa. 2009) (Jones, J.)). The R&R states that it is no defense that Petitioner eventually exhausted some of his administrative remedies while this action was pending because exhaustion is a prerequisite to filing suit. (Id. at pp. 20-21) (citing Ghana v. Holland, 226 F.3d 175 (3d Cir. 2000)). Further, Magistrate Judge Carlson determines that Petitioner failed to appeal the decision denying him placement in a RDAP and, like the RRC challenge, this claim is unexhausted. (Id. at pp. 16, 21). Finally, the Report concludes that Petitioner did exhaust administrative remedies regarding his disciplinary reports. (Id. at p. 16).

Although the R&R recommends that Petitioner's challenges to his RRC placement and the RDAP decision be dismissed for failure to exhaust, Magistrate Judge Carlson nevertheless conducts a review of the merits. First, the Magistrate Judge determines that Petitioner has not met his burden of establishing that the prison's discretionary decision regarding the length of Petitioner's RRC placement violated any constitutional rights. (Doc. 23, pp. 21-22). The Report explains that an inmate does not have a constitutional right to placement in any particular prison or to any specific custody classification and that a prison transfer does not constitute cruel and unusual punishment. (Id. at pp. 21-23) (citing Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Moody v. Daggett, 429 U.S. 78, 88 (1976); Hassain v. Johnson, 790 F.2d 1420 (9th Cir. 1986)). Additionally, while the Act permits pre-release placement, it does not compel the BOP to provide any inmate with a specific placement; rather, the Act confers discretion to prison officials to make individualized determinations using the factors delineated at 18 U.S.C. § 3621(b). (Doc. 23, pp. 24-26). Magistrate Judge Carlson details the factors that prison staff must consider when assessing an inmate's pre-release placement. (Id. at pp. 10-12). The R&R states that while all prisoners are eligible for up to twelve (12) months placement in a RRC, not all inmates are appropriate for RRC placement and the length of pre-release placement must be made on an individual basis using the criteria set forth at 18 U.S.C. § 3621(b). (Id. at pp. 12-13). Further, several courts have recently held that many inmates can be successfully re-integrated into society in one hundred eighty (180) days or less. (Id. at pp. 27-29). The R&R discusses the BOP's recommendation for Petitioner, a one hundred twenty (120) day RRC placement at the Luzerne Community Corrections Center in Philadelphia, and concludes that the prison adequately considered all the relevant factors and specifically tailored its recommendation to meet

Petitioner's needs. (Id. at 12-13, 30-31).

Next, Magistrate Judge Carlson finds that Petitioner has not shown that the BOP abused its discretion in finding Petitioner ineligible for participation in the RDAP. (Doc. 23, p. 41). The R&R discusses the incentive provision in 18 U.S.C. § 3621, which allows for a potential one (1) year sentence reduction upon successful completion of a RDAP. (Id. at pp. 8-9). The Magistrate Judge explains that space is limited in a RDAP and describes the prerequisites for entry into such a program. (Id. at pp. 8-9, 41). The Report states that after Petitioner's assessment, the prison found him ineligible for participation in a RDAP because of lack of any extensive documentation of substance abuse and, also, because his release date fell below the two (2) year minimum incarceration period typically required for participants in the RDAP. (Id. at pp. 10, 41-42). Magistrate Judge Carlson concludes that the BOP's discretionary decision not to enroll Petitioner in the RDAP was based upon valid and facially neutral factors. (Id. at pp. 43-44). Accordingly, the Report recommends that this claim also be denied on the merits. (Id.).

Finally, as to Petitioner's exhausted claim, the Magistrate Judge finds that Petitioner challenges the prison's disciplinary decisions on procedural due process grounds and asserts that there was insufficient evidence to support the findings of misconduct on his part. (Doc. 23, p. 31). The R&R discusses the minimum procedural protections applied to prison disciplinary hearings. (Id. at pp. 31-32) (citing Wolff v. McDonnell, 418 U.S. 539, 556 (1974); Meyers v. Alldredge, 492 F.2d 296, 305-07 (3d Cir. 1974)). The Report generally explains the disciplinary process, the rights afforded to inmates, and the burden of proof. (Id. at pp. 32-37), citing 28 C.F.R. § 541.10, et seq. (setting guidelines for inmate discipline procedures and listing an inmate's rights); Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 454-55 (1985) (holding

that "the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board"); Thompson v. Owens, 889 F.2d 500, 502 (3d Cir. 1989) (concluding that due process requirements at prisoner disciplinary hearings are minimal). The R&R expands on the nature of Petitioner's incident reports and outlines the process afforded Petitioner at each hearing. (Id. at pp. 3-8, 37). Magistrate Judge Carlson concludes that Petitioner was given due process and that the hearing officer's decision was supported by substantial evidence of Petitioner's misconduct. (Id. at pp. 38-39).

On May 19, 2011, Petitioner filed objections to the R&R. (Doc. 25). He argues that the R&R fails to address his claim that the BOP is violating the Second Chance Act by not properly evaluating his case under the section 3621(b) factors and is unlawfully capping RRC placement at four (4) months. (Id. at p. 1). He reiterates his claims that he needs the maximum allowable time to successfully re-enter society. (Id. at p. 2). Petitioner objects to Magistrate Judge Carlson's finding that the BOP did not abuse its discretion in making its RRC placement recommendation. (Id. at pp. 4-8). Petitioner contends that the BOP relied on false information and that, contrary to the BOP's assumptions, he does not have a secured residence, will not have financial support after release, his PhD will not assist in a job search in light of the nature of his criminal offense, and his numerous disciplinary sanctions warrant a longer RRC placement because he will need extra time to adjust to the outside world. (Id. at pp. 4-6). Petitioner argues that the BOP failed to consider his age, health problems, and the emotional and physical harm he experienced in prison. (Id. at pp. 7-8). Petitioner further objects to the Report's determination that the BOP has broad discretion in making RRC placement recommendations, asserting that this discretion is limited to ascertaining the length of placement necessary to provide the greatest

likelihood of successful reintegration into society. (Id. at p. 8).

Petitioner also objects to the Report's conclusions about exhaustion. (Doc. 25, p. 3). He asserts that he exhausted remedies before filing a traverse and that given the time constraints, the purpose of exhaustion would not be met by requiring a second round of exhaustion. (Id.). Petitioner challenges the Magistrate Judge's determination that exhaustion is a prerequisite to filing suit. (Id.) (citing Cerverizzo v. Yost, 380 Fed. Appx. 115 (3d Cir. 2010); Gambino, 134 F.3d at 171; Lyons v. U.S. Marshals, 840 F.2d 202, 05-206 (3d Cir. 1988); Snisky v. Pugh, 974 F. Supp. 817, 819 (M.D. Pa. 1997) (Conaboy, J.); Strong v. Schultz, 599 F. Supp. 2d 556 (D. N.J. 2009); Carling v. Peters, 2000 U.S. Dist. LEXIS 10288 (E.D. Pa. 2000)).

Finally, in his objections, Petitioner "accepts [Magistrate Judge] Carlson's ruling regarding the other issues namely examination of a series of prison disciplinary hearings and opportunity to participate in a Residential Drug Abuse Program (RDAP)." (Doc. 25, p. 2).

On May 23, 2011, Petitioner again filed objections to the R&R. (Doc. 28). Upon review, it appears that this filing is essentially the same objections filed on May 19, 2011, but typewritten. Compare (Doc. 25), with (Doc. 28).

On October 27, 2011, Petitioner filed a second amended habeas corpus petition pursuant to section 2241. (Doc. 35). The petition states that on June 30, 2011, Petitioner was transferred to the Lewisburg Camp. (Id. at p. 3). Petitioner alleges that after his arrival, he informed his counselor that another inmate placed a cell phone in Petitioner's property and about his cellmate's illegal activities. (Id. at pp. 3-4). On July 18, 2011, Petitioner asked for a cell reassignment. (Id. at p. 4). On July 20, 2011, a corrections officer located a cell phone under Petitioner's mattress, issued a misconduct, and placed him in the SHU. (Id. at p. 5). Petitioner

alleges that on September 2, 2011, he was found guilty of the misconduct and sentenced to loss of good time and to disciplinary sanction, but was not penalized regarding his RRC placement. (Id.). The petition lists numerous "flaws" in the hearing officer's report, specifically, the absence of fingerprints or telephone numbers tying Petitioner to the cell phone. (Id. at p. 10). Petitioner questions why his cellmate was not also charged with the illegal possession of the cell phone given that it was found in an area accessible to both and after he had made complaints about his cellmate's illegal activities. (Id. at pp. 11-12).

The second amended habeas corpus petition further alleges that on September 15, 2011, Petitioner was informed that his RRC placement was reduced to forty-one (41) days. (Doc. 35, p. 6). Petitioner claims that he filed an administrative grievance, but did not receive a response within the allotted time. (Id.). He alleges that he exhausted administrative remedies regarding his RRC placement before filing this second amended habeas petition and that another round of exhaustion would subject him to irreparable injury. (Id.) (citing Lyons, 840 F.2d 202). Petitioner asserts that there is no provision for decreasing his RRC placement because of prison violations and that the disciplinary hearing officer did not sanction Petitioner for the loss of RRC time. (Id. at p. 8). Finally, Petitioner again asks the Court to consider his lack of a secured residence and a job upon release, his age, the nature of the conviction, his medical issues, the absence of financial support, and his ineligibility for social security and medicare benefits when deciding whether the recommended length of RRC placement is adequate. (Id. at pp. 8-9).

## Discussion

Initially, this Court will adopt Magistrate Judge Carlson's findings and recommendations as to Petitioner's prison disciplinary hearings and participation in a RDAP. Because Petitioner

waived any objections on these claims, review is limited to ascertaining whether there is clear error. Having reviewed the record, this Court finds that the R&R does not contain plain error.

Next, de novo review of exhaustion of the RRC placement claim will be conducted. Despite Petitioner's objections, this Court agrees with the Magistrate Judge's analysis. The R&R correctly states that "federal prisoners are required to exhaust their administrative remedies prior to seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241." (Doc. 23, p. 18). Petitioner's argument that he exhausted administrative appeals before filing a traverse or a second amended petition in the instant action is unpersuasive because exhaustion is viewed at the time the action was initiated, not when individual documents in the action are filed. See Johnson v. Scism, 2011 U.S. Dist. LEXIS 34301, *7-8 (M.D. Pa. 2011) (Nealon, J.) (holding that the petitioner was not excused from exhaustion when his administrative appeal was still pending when the habeas corpus petition was filed). Petitioner's argument that exhaustion would be futile or cause irreparable injury also fails. Courts in this District have repeatedly held that "exhaustion of administrative remedies is not rendered futile simply because a prisoner anticipates that he will be unsuccessful in his administrative appeals before the twelve-month pre-release mark, which is a statutory maximum and not a mandate." See e.g. Malvestuto v. Martinez, 2009 U.S. Dist. LEXIS 78231, *9 (M.D. Pa. 2009) (Conner, J.); Drummond v. Martinez, 2009 U.S. Dist. LEXIS 92749, *12 (M.D. Pa. 2009) (Munley, J.).

The cases Petitioner cites in support of this objection are discriminable. Specifically, Petitioner relies on the Cerverizzo decision, but the Honorable Christopher C. Conner of this Court distinguished that case from the facts seen here. See Coleman v. Holt, 2010 U.S. Dist. LEXIS 73935, *3-4 n.1 (M.D. Pa. 2010) (Conner, J.) (discussing Cerverizzo, 380 Fed. Appx.

Case 3:11-cv-00273-WJN Document 36 Filed 11/21/11 Page 12 of 18

115). The <u>Cerverizzo</u> court held that if a prison **policy** limits inmates to a term shorter than twelve (12) months pre-release in a RRC, then exhaustion of administrative remedies would be an exercise in futility. (<u>Id.</u>) (emphasis added). However, where the detaining institution does not adhere to a **policy** which limits inmates to a maximum pre-release period of less than twelve (12) months, the inmate must exhaust administrative remedies even though his release date is approaching. (<u>Id.</u>) (emphasis added). Petitioner's reliance on <u>Strong</u> is also misplaced because that Court excused exhaustion "since Strong is challenging the validity of the BOP's April 14, 2008,[2] guidance, **not its application**." <u>Strong</u>, 599 F. Supp. 2d at 561 (emphasis added). Conversely, Petitioner, here, is challenging the application of the section 3621 factors and the Second Chance Act to his situation. The other cases Petitioner cites are similarly distinguishable. <u>See</u> <u>Gambino</u>, 134 F.3d at 171 (finding that the administrative process proved itself to be futile on addressing the merits of the claim, not due to the timing of the process); <u>Lyons</u>, 840 F.2d at 205-06 (concluding that the administrative remedy was inadequate because the forms were difficult to obtain and the petitioner's complaints were not the kinds of problems that the designated procedure was designed to redress promptly); <u>Snisky</u>, 974 F. Supp. at 819 (excusing exhaustion of the petitioner's challenge to the BOP's refusal to reduce his sentence based on his prior crime of violence not only because of the petitioner's upcoming release date, but also on "the fact that [his] offense is categorically defined as a 'crime of violence' by the terms of the Program Statement"); <u>Carling</u>, 2000 U.S. Dist. LEXIS 10288 (discussing exhaustion of the petitioner's military obligation).

---

[2]On April 14, 2008, the BOP's Office of General Counsel and Correctional Programs Administrator issued a memorandum entitled "Pre-Release Residential Re-Entry Center Placements Following the Second Chance Act of 2007."

Accordingly, after de novo review, this Court will adopt Magistrate Judge Carlson's findings that Petitioner failed to exhaust administrative remedies regarding his RRC placement claim before initiating this action. Further, this Court will not excuse exhaustion of the RRC placement claims raised in the second amended habeas petition for futility or irreparable injury. See Miceli v. Martinez, 2008 U.S. Dist. LEXIS 71877 (M.D. Pa. Sept. 15, 2008) (Rambo, J.) (dismissing the habeas corpus petition for failure to exhaust administrative remedies and rejecting the petitioner's argument that he would be further prejudiced by the delay of completing exhaustion process). Objections to the R&R's exhaustion analysis will therefore be overruled.

Next, assuming arguendo that Petitioner did exhaust administrative remedies, this Court has conducted de novo review and concludes that the RRC placement claims fail on their merits. This Court agrees with Magistrate Judge Carlson that Petitioner does not have a constitutional right to RRC placement and that the Second Chance Act, while authorizing pre-release placement, does not mandate that he be released into a RRC. The R&R thoroughly outlined the factors the BOP must consider, and this Court agrees that all these factors were studied by the BOP when making a RRC placement recommendation that was specifically tailored to meet Petitioner's needs.

In his objections, Petitioner argues that the BOP relied on false assumptions in concluding that he has a secured residence, financial support, and that his PhD will help him secure employment. Additionally, he asserts that his numerous disciplinary sanctions justify a longer RRC placement and that the BOP failed to consider his age, health problems, and the hardships experienced in prison. After de novo review, Petitioner's objections will be overruled.

The Inmate Skills Development Plan for Petitioner's Program Review on November 10,

2010, lists Petitioner's age, the nature of his offense, his prison disciplinary history, and his restitution obligations. (Doc. 11-1, pp. 47-50). The Plan states that attention is required because Petitioner has "**no** secured housing upon release." (Doc. 11-2, p. 7) (emphasis added). The Plan indicates a satisfactory employment history, noting that Petitioner was employed at the time of his arrest and had a consistent work history prior thereto; and a satisfactory career development based on his PhD, expertise in chemical engineering, and realistic job goals. (Id. at pp. 1-2). However, it cautions that Petitioner did not work while incarcerated and has not secured employment once released. (Id.). The Plan notes that Petitioner has knowledge in financial accounting, but negatively reports that he does not have a good credit history. (Id. at p. 6). It states that Petitioner is not eligible for Social Security assistance. (Id. at p. 3). Despite Petitioner's contention, the Plan also takes into account Petitioner's physical and mental health issues. (Id. at pp. 3-4). Accordingly, after de novo review, this Court agrees with the R&R that the BOP considered all the relevant factors and made an individualized assessment of Petitioner's need for RRC placement. See also (Doc. 11-1, pp. 3-7). Petitioner's mere disagreement with the BOP's discretionary decision does not justify habeas relief. See Johnson, 2011 U.S. Dist. LEXIS 34301 at *15 (dismissing the habeas corpus petition).

Petitioner also objects to the Report's "suggestion regarding the broad discretion of BOP officials in handling inmates", arguing that the Act limits the BOP's discretion in determining RRC placement by requiring that the placement duration be of a sufficient length to provide the greatest likelihood of successful reintegration into society. This Court agrees that the BOP must ensure that an inmate spends the final portion of his sentence "under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into

the community"; however, the Magistrate Judge is correct that the BOP is afforded discretion in making this determination. See 18 U.S.C. § 3624(c)(1). Only an abuse of this discretion would allow the courts to disturb the BOP's recommendations. See Greene v. Longley, 2011 U.S. Dist. LEXIS 100286, *13-15 (W.D. Pa. 2011). For the reasons previously stated, this Court concludes that the BOP did not abuse its discretion in making its RRC placement recommendation for Petitioner.

Furthermore, although the second amended habeas petition challenges the BOP's decision to reduce Petitioner's RRC placement duration from four (4) months to forty-one (41) days, this Court finds that it did not abuse its discretion.[3] Petitioner incorrectly claims there is no provision for decreasing his RRC placement because of prison violations. Rather, the BOP is directed "to consider that inmates who have 'recent, serious, or chronic misconduct and those who have previously failed an RRC program may be inappropriate' for RRC placement." Jernigan v. Scism, 2011 U.S. Dist. LEXIS 129004, *13-14 (M.D. Pa. 2011) (Jones, J.) (dismissing the petitioner's habeas claim that the BOP wrongly reduced the duration of his RRC placement from six (6) months to sixty (60) days after he was found guilty of misconduct charges). Petitioner's history of disciplinary action and his most recent charges justify the BOP's discretionary decision to reduce the length of Petitioner's RRC placement; accordingly, the claim raised in the second amended habeas petition will also be dismissed.

Finally, this Court finds that Petitioner's challenges to the September 2, 2011, misconduct hearing and the hearing officer's subsequent report do not warrant habeas relief. In addition to

---

[3]Based on the statements in the second amended habeas corpus petition indicating that Petitioner did not exhaust administrative appeals with respect to the recent reduction in his RRC placement, and for the reasons discussed above, this Court concludes that the claim could also be dismissed for failure to exhaust. Petitioner's request for a futility exception will be denied.

being unexhausted,[4] the claims fail on their merits. Petitioner claims that there are "flaws" in the report, that anyone could have planted the cell phone among his things, that there was no physical evidence tying him to the phone, and that his cellmate should also have been charged with a misconduct. (Doc. 35, pp. 10-12). However, Petitioner acknowledges that the cell phone was found under his mattress, (Doc. 35, p. 5), and does not allege any procedural due process violations. See Seville v. Martinez, 130 Fed. Appx. 549, 551 (3d Cir. 2005) ("[T]he filing of a fraudulent misconduct report and related disciplinary sanctions do not without more violate due process."). Consequently, the claims raised in the second amended habeas corpus petition will be dismissed.

**Conclusion**

In the absence of objections to Magistrate Judge Carlson's findings and recommendations regarding the prison disciplinary hearings and the BOP's decision to deny Petitioner participation in a RDAP, this Court has reviewed the R&R for plain error, finds none, and will dismiss these claims. After de novo review, this Court will also dismiss Petitioner's claims regarding his RRC placement and any additional claims raised in the second amended habeas corpus petition. Magistrate Judge Carlson correctly concluded that Petitioner's failure to exhaust these claims should not be excused. Moreover, the BOP considered all the relevant factors when making a RRC placement recommendation for Petitioner. The BOP did not abuse its discretion in

---

[4]Although Petitioner argues that did not receive a response to his BP9 within the time provide, 28 C.F.R. § 542.18 states that "[i]f the inmate does not receive a response within the time allotted for a reply, including extension, the inmate may consider the absence of a response to be a denial at that level." Miller v. Sniezek, 2010 U.S. Dist. LEXIS 59519, *4 (M.D. Pa. 2010) (Kane, J.). Nevertheless, Petitioner failed to file an administrative appeal and offers no support for his allegation that "completing the remedy procedure for the cell phone charge will be pointless." (Doc. 35, p. 7).

determining the length of placement or in reducing the RRC duration following Petitioner's misconduct convictions. The R&R will be adopted in its entirety and the habeas corpus petitions dismissed. Further, Petitioner fails to allege any constitutional violations with his recent misconduct proceedings to warrant habeas relief. Therefore, the second amended habeas corpus petition, filed without leave of Court, will also be dismissed.

**United States District Judge**

**Date:** November 21, 2011

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALI AMIRNAZMI,<br>    Petitioner | NO. 3:11-CV-273 |
| v. | (JUDGE NEALON)<br>(MAGISTRATE JUDGE CARLSON) |
| WILIAM A. SCISM,<br>    Respondent | |

## ORDER

AND NOW, this 21st day of NOVEMBER, 2011, **IT IS HEREBY ORDERED THAT:**

1. The Report and Recommendation (Doc. 23) is **ADOPTED**;

2. Petitioner's objections (Docs. 25, 28) are **OVERRULED**;

3. The habeas corpus petitions (Docs. 1, 8, 35) are **DISMISSED**;

4. The Clerk of Court shall **CLOSE** this case; and

5. Any appeal will be deemed frivolous, without probable cause, and not taken in good faith.

*[signature]*
**United States District Judge**